IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LINDA L. BARRY | : | CIVIL ACTION |
| v. | : | NO. 07-4727 |
| MICHAEL J. ASTRUE, Commissioner of Social Security | : | |

**MEMORANDUM**

**Juan R. Sánchez, J.**                                                                                                                                                   **February 2, 2010**

      Linda L. Barry asks this Court to review the Social Security Administration's (SSA) denial of her application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI), pursuant to 42 U.S.C. § 405(g). Barry claims she has been disabled since August 2005 due to severe neck pain, back pain, and right arm pain. Barry asserts the Administrative Law Judge's (ALJ) decision denying her benefits was not supported by substantial evidence and included factual errors. This Court disagrees. Accordingly, this Court adopts the Report and Recommendation of U.S. Magistrate Judge Timothy R. Rice.

**FACTS**

      Barry is a 50-year-old woman with a high school education and some computer training. She currently lives with her two adult sons. From 1993 to 1999, Barry worked as an elementary school cafeteria worker. During the summers of 1997-2000, she worked as a program coordinator. Barry worked as a receptionist for the County Board of Assessments from 1999 to August 26, 2005.

      Barry first experienced back pain in 2001. In 2002, she had cervical fusion surgery to remove two discs in her neck. Barry began post-surgical treatment on November 29, 2004, and, as part of this treatment, she took medication for pain and anxiety. On January 31, 2005, Barry returned to

1

work part-time, despite a car accident ten days prior. By March 22, 2005, Barry noted a significant improvement in her pain symptoms and she was cleared to return to full-time work in April 2005. Barry's condition continued to improve for several months until November 11, 2005, when Dr. Roy Lerman, Barry's post-surgical treating physician, noted Barry's shoulder pain had increased. In February 2006, Dr. Anthony Niescer, Barry's family physician, referred her to Dr. David Glaser, who diagnosed her with suprascapular neuropathy. Dr. Glaser concluded that Barry's cervical fusion was likely not the source of her pain.

In May 2006, Barry returned to Dr. Glaser and reported her pain and function was improving. Dr. Glaser referred Barry to Dr. Gerald Williams, a shoulder surgeon, to discuss possible surgical options. Dr. Williams recommended Barry continue physical therapy and prescribed a home-based care program. Barry had no further consultations with Dr. Williams.

Barry claims she has constant pain which significantly limits her daily capabilities. She asserts she can walk for no more than 20 minutes and can stand for 30 minutes to one hour. She is able to perform household chores on a limited basis and sometimes requires the assistance of her sons or brother.

On February 23, 2006, Barry filed an application for DIB, alleging disability as of August 26, 2005, due to pain in her neck, back, and right arm. She applied for SSI on March 9, 2006. Both applications were denied on June 21, 2006. Barry requested a hearing before an ALJ, which was held on April 25, 2007.

On April 23, 2007, prior to the ALJ hearing, Dr. Niescer sent a letter to the ALJ, detailing Barry's condition and noting she had suffered a second car accident on February 17, 2007. Dr. Niescer's letter also stated Barry was under the care of a pain management specialist. Barry testified

2

at the hearing she had visited Dr. Larry Chou for pain assistance. Dr. Chou wrote a three-sentence letter to the ALJ, stating Barry was under his care and advising she should be excused from work for a period of time. Dr. Chou's letter was unaccompanied by treatment notes or history. Barry produced no other evidence regarding treatment with Dr. Chou or any other pain management specialist.

The ALJ applied the five-step sequential evaluation process, established by the Department of Health and Human Services, to determine whether Barry was disabled and eligible for benefits. 20 C.F.R. § 404.1520. First, the ALJ found Barry engaged in substantial gainful activity since August 26, 2005, the alleged onset date. Second, the ALJ found Barry's cervical strain and sprain and suprascapular nerve palsy of the right shoulder were severe impairments. Third, the ALJ noted such impairments were not Listed Impairments in Appendix 1, Subpart P, Regulation No. 4, nor were they medically equal to the Listed Impairments.[1] At step four, the ALJ concluded Barry had Residual Functional Capacity (RFC) to perform light work which did not involve frequent use of her right arm.[2] Finally, the ALJ determined Barry was capable of performing past relevant work, particularly work as a receptionist. Therefore, the ALJ determined Barry was not disabled. On May 20, 2007, the ALJ denied Barry's application for DIB and SSI. The Appeals Council of the SSA denied Barry's request to review the ALJ's decision. Barry then timely appealed to this Court.

**DISCUSSION**

This Court reviews *de novo* Barry's objections to the Magistrate Judge's Report and

---

[1] The impairments listed in Appendix 1, Subpart P, Regulation No. 4, are those which would prevent an adult from performing any gainful activity. *See* 20 C.F.R. §§ 404.1525(a), 416.925(a).

[2] A claimant's RFC is "the most [she] can still do [in a work setting] despite [her] limitations." 20 C.F.R. §§ 404.1545(a), 416.945(a).

Recommendation. 28 U.S.C. § 636(b)(1)( C). As long as the ALJ's factual findings are supported by substantial evidence in the record, however, this Court is bound by those findings. 42 U.S.C. § 405(g); *Doak v. Heckler*, 790 F.2d 26, 28 (3d Cir. 1986) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation marks omitted). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citation and internal quotation marks omitted). This Court may not weigh the evidence or substitute its own conclusions for those of the ALJ when determining whether substantial evidence exists. *Burns v. Barnhart*, 312 F.3d 113, 118 (3d Cir. 2002).

To qualify for DIB or SSI benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant may satisfy her initial burden by showing she is unable to return to her previous work because of her impairment. *Rutherford*, 399 F.3d at 551. Once she makes such a showing, the burden shifts to the Commissioner to show that, given her medical condition, age, education, and work experience, she has the ability to perform other existing jobs in the national economy. *Id.*

The ALJ must consider all of the evidence and provide reasons for discounting any rejected evidence. *Stewart v. Sec'y of HEW*, 714 F.2d 287, 290 (3d Cir. 1983). When there is conflicting testimony, the ALJ may choose whom to credit but "cannot reject evidence for no reason or for the wrong reason." *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993) (citation and internal

4

quotation marks omitted); *see also Williams v. Sullivan*, 970 F.2d 1178, 1187 (3d Cir. 1992) (stating an ALJ may reject conflicting medical evidence).

Barry offers three main objections to the Report and Recommendation.

First, Barry objects to the Magistrate Judge's conclusion that the ALJ had substantial evidence to discount the assessment of Barry's treating physician, Dr. Niescier. In deciding what weight to accord medical evidence, an ALJ must first determine whether the evidence is from a treating, non-treating, or non-examining source. A treating source is a "physician, psychologist, or other acceptable medical source" who provides a patient with "medical treatment or evaluation," and has an "ongoing treatment relationship" with the patient. 20 C.F.R. §§ 416.902, 404.1502. A medical source may be considered a treating source if the claimant sees the source "with a frequency consistent with accepted medical practice for the type of treatment . . . required for [the claimant's] condition." *Id.* A medical source is not considered a treating source if the treatment is based "solely on [the claimant's] need to obtain a report in support of [her] claim for disability," and not based on a need for medical treatment. *Id.* Under this standard, Dr. Niescier is a treating source because he provided Barry with medical treatment and evaluations on an ongoing basis.

A treating source's opinion must be given controlling weight if it is supported by medically acceptable clinical and laboratory diagnostic techniques and it is consistent with other substantial evidence in the record. *See* 20 C.F.R. §§ 416.927(d)(2), 404.1527(d)(2); SSR 96-2p, 1996 WL 374188. A treating source's opinion may be rejected "on the basis of contradictory medical evidence," *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999), or if unsupported by sufficient clinical data, *Newhouse v. Heckler*, 743 F.2d 283, 286 (3d Cir 1985). The ALJ may also accord the treating source's opinion "more or less weight depending upon the extent to which supporting

explanations are provided." *Plummer*, 186 F.3d at 429 (citation omitted).

Where a treating source's opinion is not given controlling weight, the ALJ must determine what weight to give all medical sources by considering several factors, including the length of the treatment relationship and frequency of visits, the nature and extent of the treatment relationship, whether the medical source's opinion is supported by medical evidence, whether such opinion is consistent with the medical record, and the medical source's specialization. 20 C.F.R. §§ 416.927(d); 404.1527(d). An ALJ must not reject a treating source's opinion based upon the ALJ's "own credibility judgments, speculation or lay opinion." *Morales*, 225 F.3d at 317.

Dr. Niescer's opinion was offered in the form of two documents. Dr. Niescer completed a Pennsylvania Department of Welfare Employability Re-Assessment Form on April 13, 2006 stating Barry was temporarily disabled from August 25, 2005, through August 25, 2007.[3] Dr. Niescer also submitted a letter dated April 23, 2007, stating Barry was presently disabled due to cervical spine disc disease, cervical muscle sprain, shoulder muscle atrophy with some brachial plexus neuropathy, anxiety, depression, and panic attacks.

Other medical evidence in the record, however, was inconsistent with the debilitating

---

[3] The ALJ did not afford Dr. Niescer's Re-Assessment Form controlling weight because the form was required for the patient to receive benefits or insurance coverage, and for the doctor to receive payment. *See Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) (noting fill-in-the-box forms are weak evidence at best). Under the relevant regulation, a medical source is not a treating source, and the medical opinion at issue is thus not entitled to controlling weight, if the claimant's "relationship with the source is not based on [the claimant's] medical need for treatment or evaluation, but solely on [the claimant's] need to obtain a report in support of your claim for disability." 20 C.F.R. § 404.1502. It is undisputed Dr. Niescer is a treating source, however, part of his medical opinion was offered in a form required for Barry to receive disability benefits. This Court need not decide whether Dr. Niescer's opinion, as expressed in the Re-Assessment Form, is automatically denied controlling weight due to the Form's purpose because the Court finds the ALJ's conclusion – that Dr. Niescer's opinion was generally not entitled to controlling weight because it was inconsistent with other substantial evidence in the record – is supported by substantial evidence.

condition depicted in Dr. Niescer's letter. The ALJ thoroughly discussed the evidence, and based her rejection of Dr. Niescer's opinion on its inconsistency with other evidence in the record and its lack of support. The ALJ thoroughly addressed the results of various medical tests and opinions of other treating physicians, both of which suggested Barry's condition was improving, not deteriorating as suggested by Dr. Niescer. For example, the ALJ noted a March 15, 2006 MRI demonstrated no disc herniation or stenosis. The ALJ also discussed evidence from two other medical specialists, Dr. Glaser and Dr. Williams, which showed Barry's condition was improving. In April 2006, Dr. Glaser noted Barry had a painful range of motion in her shoulder and shoulder weakness, and diagnosed her with suprascapular neuropathy. He discussed surgical options with her, however, Barry did not undergo surgery, and at a May 17, 2006 visit, Barry reported her pain and function were improving. An examination revealed less atrophy and improved strength. Moreover, a June 27, 2006 EMG revealed improvement in the severe subscapular neuropathy and evidence of moderate restoration of function of the infraspinatus muscle. In addition, Dr. Glaser expressly ruled out Barry's surgical fusion as the source of her pain, a condition Dr. Niescer, a non-specialist, deemed disabling on April 23, 2007. Consistent with Dr. Glaser's findings, on July 14, 2006, Dr. Williams noted Barry's pain and function were improving and Barry believed she was 20-30% better than she was at her May 17, 2006 visit. Dr. Williams's physical examination of Barry revealed no appreciable atrophy, and he prescribed a home-based physical therapy program. In light of these inconsistencies, the Court concludes the ALJ's decision to afford less than controlling weight to Dr. Niescer's opinion was supported by substantial evidence.

Second, Barry argues the Magistrate Judge erred in concluding the ALJ's RFC finding – that Barry could perform light work – was supported by substantial evidence. Barry argues the ALJ's

decision contained so many errors that it is entirely unreliable.[4] The Court agrees the ALJ's decision contained errors; however, the errors Barry cites were harmless because they are not determinative of the outcome in this case.[5] *See Rutherford*, 399 F.3d at 553 (noting remand is not required where the outcome would not be different).

In making her RFC finding, the ALJ relied on the testimony of a vocational expert (VE). Barry asserts the RFC finding should be rejected because the hypothetical questions posed to the VE did not convey all of Barry's credibly established limitations, namely, the limitations on the number of hours per week she could work and the number of weeks per year she could work. In disability determination hearings, vocational expert testimony

> typically includes, and often centers upon, one or more hypothetical questions posed by the ALJ to the vocational expert. The ALJ will normally ask the expert whether, given certain assumptions about the claimant's physical capability, the claimant can perform certain types of jobs, and the extent to which such jobs exist in the national economy.

*Rutherford*, 399 F.3d at 553 (citation and internal quotation marks omitted). In such hypothetical questions, "the ALJ must accurately convey to the vocational expert all of a claimant's *credibly established limitations*." *Id.* at 554 (emphasis in original). A "credibly established limitation" is one that is "medically supported and otherwise uncontroverted in the record." *Id.* A limitation that is "medically supported but also contradicted by other evidence in the record may or may not be found

---

[4] The Magistrate Judge concluded the ALJ erred in finding Barry had engaged in substantial gainful activity since August 26, 2005. The wrong vocational expert was identified, and the ALJ incorrectly calculated the number of times Barry attended physical therapy.

[5] Barry similarly objects that the ALJ's decision did not perfectly describe all of her alleged maladies, including her migraines. Though the ALJ's decision omitted discussion of migraines, the decision adequately addressed Barry's infirmities, and the absence of discussion of migraines is a harmless error. *See Rutherford*, 399 F.3d at 553.

credible." *Id.*

In this case, the VE was provided with three hypotheticals. The initial hypothetical posited to the VE assumed an individual between the ages of 45 and 47, with a high school education and Barry's past work experience, who could perform light work without frequent reaching with the dominant arm. Barry's attorney presented the same hypothetical with the additional assumption that the person could not work more than 18 hours per week, and the ALJ presented another hypothetical assuming a person would need at least 12 weeks off per year. However, neither of these additional limitations were credibly established. Though Barry claimed she was limited in such a manner, the ALJ concluded there was no medical reason to limit Barry to part-time work. The ALJ discussed the inconsistencies between Barry's statements of chronic pain and the medical evidence showing improvement. Based upon this evaluation, she chose not to treat Barry's claim as a credibly established limitation. Because the ALJ's decision that Barry was not limited to part-time work was supported by substantial evidence, the hypothetical questions provided to the VE adequately addressed all credibly established limitations. Therefore, the ALJ's RFC determination was supported by substantial evidence.

Finally, Barry asserts the Court should consider treatment records prepared by Dr. Chou. These records were not submitted to the ALJ, instead, Barry submitted these records to the Appeals Council along with a request they be considered. It is unclear whether the Council agreed to consider these records. Barry did not, however, provide the records to the Magistrate Judge. She now attaches them for this Court's review.

This Court may remand a case based upon the submission of new evidence, "but only upon a showing that there is new evidence which is material and that there is good cause for the failure

to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). Therefore, to warrant remand, Barry's new evidence must be both "new" and "material." *Szubak v. Sec'y of Health & Human Servs.*, 745 F.2d 831, 833 (3d Cir. 1984). "To be material, there 'must be a reasonable probability that the new evidence would have changed the outcome' of the Commissioner's decision. Finally, the claimant must show good cause for her failure to submit the evidence in an earlier proceeding." *Beety-Monticelli v. Comm'r of Soc. Sec.*, No. 09-1224, 2009 WL 2700170, at *3 (3d Cir. Aug. 28, 2009) (quoting *Szubak*, 745 F.2d at 833).

Barry makes no good cause argument in her brief. She states she asked the Appeals Council for "additional time to submit medical reports that had been requested and not yet received." Pl.'s Br. at 15. She does not, however, assert there was good cause for their delayed submission, either in the first instance or at this stage of the litigation. More importantly, Barry does not show such reports constitute "new" or "material" evidence. Barry argues Dr. Chou's records "will support the fact that the plaintiff has continuing and increasing complaints after her most recent motor vehicle collision." *Id.* Barry included her complaints in her testimony to the ALJ. The ALJ thoroughly addressed Barry's testimony and weighed it against the other medical evidence in the record. Thus, at this late stage of litigation, further evidence of Barry's complaints is neither new nor material. Therefore, this Court adopts the Report and Recommendation of U.S. Magistrate Judge Timothy R. Rice.

An appropriate order follows.